**In the Matter of the APPLICATIONS of NUCLEAR GENERATION EMPLOYEES ASSOCIATION, and William Carano, Thomas Pulcher, and Richard Wiese, Jr. individually and as representatives of the Nuclear Gener-**

ation Employees Association, and Mark Bengis, William M. Brush, Thomas M. Butler, John A. Boccato, Joseph B. Chambers, Joseph P. Colloca, William W. Comstock, Frank Conte, Robert Cullen, Alan Degracia, Daniel D. Dehm, Edward Diamond, Robert Dolansky, Michael J. Dries, Zvi Eisenberg, Richard H. Finger, James Gillen, Kenneth Goodroe, Walter D. Graff, Boyd W. Grandy, Robert T. Hansler, Stephen M. Haskell, Nelson C. Heddle, Jr., John E. Hill, John J. Hill, Michael P. Hogan, Dennis Jenny, Noel J. Labbe, Roger Lauricella, Robert C. Lee, Frederick J. Lepine, Richard V. Noroian, Thomas D. Opet, Mark Andrew Perkins, Stephen G. Prussman, Edwin A. Rodriguez, Robert C. Rottenberk, Margaret Saladino, Robert M. Sarkissian, Stephen M. Smith, Robert Solanto, John A. Solini, David Spindler, William E. Stell, Charles Tessmer, Kenneth J. Vehstedt, Robert Vitale, James Werner, John Whitney, James S. Youlen, Brian T. Young, Roger Young, and John Zahn, individually, Petitioners–Plaintiffs,

v.

NEW YORK POWER AUTHORITY a/k/a/ Power Authority of the State of New York, Entergy Corp., Entergy Nuclear Operations, Inc., Entergy Nuclear Fitzpatrick, L.L.C., Entergy Nuclear Indian Point 3, L.L.C., and New York State and Local Employees Retirement System, Respondents–Defendants.

No. 00 CIV 6346 CM.

United States District Court,
S.D. New York.

April 6, 2001.

Tracey S. Bernstein, Sklover, Himmel & Bernstein, L.L.P., New York City, for Plaintiffs.

Philip M. Halpern, Pirro, Collier, Cohen & Halpern, LLP, Robert Hermann, Plunkett & Jaffe, P.C., White Plains, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING MOTION TO REMAND

MCMAHON, District Judge.

Plaintiffs bring an action pursuant to Article 78 of the New York CPLR for an order declaring that defendant New York Power Authority ("NYPA") failed to correctly advise its employees of the terms, conditions and benefits of their continued employment by defendant Entergy Corp. ("Entergy") upon the purchase and sale of two nuclear power plants. Plaintiffs also move under Article 30 of the CPLR for a

judgment declaring (1) that plaintiffs are entitled to certain benefits pursuant to their employment with NYPA that will not be diminished upon the sale of the power plants; (2) that plaintiffs are third-party beneficiaries of the Purchase and Sale Agreement between NYPA and Entergy; and (3) that the Purchase and Sale Agreement between NYPA and Entergy diminished the pension and retirement benefits of plaintiffs in violation of the New York State Constitution, Article V, Section 7.

Defendant Entergy timely removed this action to federal court.[1] Plaintiffs now move for voluntary dismissal of Entergy as a defendant, and for remand of the case to state court. Defendants Entergy and NYPA move for dismissal on the pleadings.

On November 21, 2000, the parties closed on the purchase and sale of the power plants. In their respective reply briefs, both NYPA and Entergy moved to dismiss plaintiffs' claims on the ground of mootness. On March 8, 2001, this Court requested and received a letter brief from plaintiffs in support of their position that the petition is not moot.

## FACTUAL BACKGROUND

The Nuclear Generation Employees Association ("NGEA") is an unincorporated association formed in January, 2000 to promote the interests of its members and to act for their mutual protection. The more than four hundred members of the NGEA were, until recently, nonunion employees of the New York Power Authority ("NYPA") employed at the James A. Fitzpatrick Nuclear Power Station ("JAF"), the Indian Point 3 Nuclear Power Station ("IP3") and the White Plains, New York corporate offices of NYPA (collectively, the "Transfer Facilities").

Plaintiffs are a group of 59 employees from the Transfer Facilities who served in various management-level positions and held their jobs "at will." The New York State Employees Retirement System ("NYSERS") administers the funds that provide pension allowances for vested employees. At the time the lawsuit was filed, all of the members of the NGEA were employed by NYPA and were members of NYPA's management team. They were not protected by a union or employment contract. As employees of NYPA, the members of NGEA received certain benefits during their employment with NYPA and were to receive certain benefits upon their retirement from employment with NYPA.

On or about February 14, 2000, NYPA and the Entergy Group announced an agreement in principle for the sale by NYPA to the Entergy Group of the two nuclear power plants, JAF and IP3, and the White Plains corporate office. On March 28, 2000, NYPA and the Entergy Group signed a purchase and sales agreement to that effect. Pursuant to the terms of that agreement, upon the closing, the NGEA members' employment with NYPA was to cease and every employee who consented to do so would become an employee of the Entergy Group. The NYPA and Entergy discussed the compensation and benefits of NYPA employees.

In their petition, plaintiffs alleged that they would lose protected property interests in pension and employment benefits once their employment with NYPA ended. Plaintiffs brought this proceeding to have a court determine their rights to future benefits before their employment with NYPA ceased at the time of the projected closing. Plaintiffs also sought leave to intervene in the licensing transfer proceed-

---

1. The Petition was filed on July 27, 2000 and the case was removed on August 24, 2000.

ing relating to JAF and IP3 pending before the United States Nuclear Regulatory Commission, which, at the time of filing the Complaint, had not yet issued a decision on the transfer.

Plaintiffs sought a declaration that NYPA failed to perform its duty and acted in excess of its authority through its actions which allegedly diminish plaintiffs' pension and retirement benefits in violation of Article V, Section 7 of the New York State Constitution; a declaration of their rights based on promises made by NYPA and Entergy regarding plaintiffs' future employment, benefits, rights and entitlements, so as "to provide necessary clarity, guidance and certainty to plaintiffs"; a declaration that plaintiffs are third-party beneficiaries of the Agreement between NYPA and Entergy; and a declaration that the agreement between NYPA and Entergy diminished or impaired plaintiffs' pension and retirement benefits in violation of the New York State Constitution.

On October 4, 2000, the parties stipulated that the petition was dismissed as against NYSERS. Entergy removed the litigation from New York State Court to this Court on the grounds that the Employee Retirement Income Security Act ("ERISA") would govern any future disputes once plaintiffs became private sector employees. Entergy argues that ERISA both preempts state court review and provides the exclusive enforcement provision for plaintiffs' potential future injuries. NYPA and Entergy now move for a judgment on the pleadings dismissing the Complaint in its entirety, and plaintiffs move to remand.

On November 9, 2000, the Nuclear Regulatory Commission granted approval for the transfer of IP3 and JAF from the NYPA to Entergy. On November 21, 2000, the parties closed on the purchase and sale of the power plants. As of that date, 48 of the plaintiffs had signed written consent forms agreeing to transfer to Entergy, 6 had decided to retire, and two were on medical leaves of absence.

After considering the arguments of the parties, I am constrained to conclude that I have no power to adjudicate the matter in suit—whatever it may be. Whether because the claim was wrongly removed, or because there is no case in controversy, this Court has no subject matter jurisdiction. Which of those defects is implicated depends on how the allegations of the Complaint are read. Therefore, I shall discuss them both.

## DISCUSSION

 Any action that was originally filed in state court may be removed by a defendant to federal court only if the case originally could have been filed in federal court. *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir.1998) (citing 28 U.S.C. § 1441(a)). Furthermore, "[i]f it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (citing 28 U.S.C. § 1447(c)).

 Where, as here, there is no diversity of citizenship alleged, removal depends upon federal question jurisdiction. *See Marcus*, 138 F.3d at 52. "The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule," which provides that "federal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law, and only when plaintiff's

well-pleaded complaint raises issues of federal law." *Id.* (citation omitted). Thus, under the well-pleaded complaint rule, plaintiff is "master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Id.* However, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.*, 463 U.S. at 22, 103 S.Ct. 2841.

■ On the face of the Complaint, Plaintiffs have alleged only state law causes of action. This case was filed in state court for declaratory relief, purporting to request a declaration of plaintiffs' rights under the Agreement. Defendant Entergy argues that this case falls under the corollary to the well-pleaded complaint rule—the doctrine of complete pre-emption—which comes into play when the pre-emptive force of a statute is so extraordinary that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)) (footnote omitted). Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *Id.* Under such circumstances, despite the fact that the complaint may raise only state law claims, the well-pleaded complaint rule is said to be satisfied, and removal is proper. *See Marcus*, 138 F.3d at 53. The U.S. Supreme Court has held that ERISA defines such an area of law. *Metropolitan Life*, 481 U.S. at 65–66, 107 S.Ct. 1542.

■ Section 502(a)(1)(B) of ERISA's civil enforcement provisions, the so-called "complete pre-emption" provision, *see, e.g., Moscovitch v. Danbury Hosp.*, 25 F.Supp.2d 74, 82 (D.Conn.1998), provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Thus, claims that can be properly characterized as seeking to recover benefits, to enforce rights, or to clarify rights to future benefits under a plan covered by ERISA are said to be "completely pre-empted." *See Metropolitan Life*, 481 U.S. at 62–67, 107 S.Ct. 1542. That is, even if facially the Complaint makes only state law claims, if those claims come within the provisions of § 502 of ERISA (i.e., if they seek to recover benefits, enforce rights or clarify rights under an employee benefit plan that is covered by ERISA), they can be re-characterized as claims "arising" under federal law and are removable to federal court. *See id.*

■ It is beyond question that the terms and conditions of plaintiffs' employment with NYPA do not implicate ERISA. Employee benefit plans run by State agencies (like NYPA) are public assets and are not subject to ERISA—indeed, they are expressly exempted from the reach of the statute. ERISA, 29 U.S.C. 1002(32). Thus, if all the plaintiffs' prolix, yet artlessly-drafted Petition sought was a declaration of what their benefits were at the time of the filing of the suit—when they were still State employees and their benefits were administered by ERISA-exempt plans—the case could not properly be removed.

Entergy contends, however, that plaintiffs were not seeking a declaration of what their rights and benefits were at the time the suit was filed (or at the time the

Agreement was signed). Rather, it argues, plaintiffs assumed that their lot would worsen if the sale took place and wanted a declaration that any diminution of benefits by Entergy after the Agreement was consummated would violate the law. Since any anticipated injury would occur only after the sale was complete, when plaintiffs were Entergy employees, Entergy argued that what plaintiffs were seeking was a declaration of their future benefits under what was destined to become an ERISA-governed employee benefit plan.

Plaintiffs have asserted four claims for relief.

*First and Second Claims for Relief*

■ In their first claim for relief, plaintiffs seek an order of the court (a) declaring that NYPA failed to perform a duty enjoined on it by law; (b) directing NYPA and The Entergy Group to abide by its obligations under the law and the Agreement by providing petitioners with a clear, definitive, and binding statement of their respective rights and benefits, including but not limited to the terms and conditions of their employment, upon the transfer of their employment under the Agreement from NYPA to The Entergy Group; (c) declaring that [by entering into the agreement] NYPA has acted in excess of its authority and in contravention of law; and (d) directing NYPA to abide by its obligations under the law and provide petitioners with a clear, definitive and binding statement of their employment and retirement rights and benefits upon the transfer of their employment from NYPA to The Entergy Group under the Agreement. (Petition ¶ 210(a)-(d).) Plaintiffs' second claim for relief asks that the declaration from the court include statements of their present and future rights to pension, employment, medical and life insurance, vacation days and sick leave upon retirement.[2]

2. The Second Claim for Relief requests a declaration of the following rights:

(a) Pension
i. Petitioners' vested NYSERS pension rights will remain vested
ii. Petitioners' membership in NYSERS, whether vested or unvested, will continue during their employment with The Entergy Group
iii. At retirement, petitioners will receive a pension based upon their combined years of service under NYSERS and The Entergy Group that shall be equal to what each petitioner would have received had they remained part of NYSERS through continued NYPA employment.
iv. As part of the "seamless" transition and receipt of identical benefits, petitioners will be made whole on the taxable portion of their retirement pension that comes from The Entergy Group.
v. Petitioners will receive the benefit, and burden, of any changes to NYSERS retirement benefits subsequent to the Closing date of the Agreement, including but not limited to the elimination of employee pension contributions and increases to the retirement benefit (including but not limited to cost of living adjustments).
vi. The Entergy Group shall provide to petitioners a defined pension plan that will pension and all related benefits that is identical in all related benefits that is identical in all material respects to that provided petitioners by NYPA as of the time of the closing.
vii. Future cost of living increases in the NYSERS retirement pension will not reduce the amount of Entergy's contribution to the employees pension.
viii. At retirement, petitioners will remain eligible to buy back, or receive credit for, prior years of service and have the additional years of service credited in their retirement benefit calculation.
(b) Employment
i. The Entergy Group shall employ petitioners at the physical locations where they are employed by NYPA
ii. Entergy shall employ petitioners for at least one year, subject only to termination for cause
iii. The Entergy Group shall employ petitioners at a rate of base pay at least equal

In the first and second claims for relief, using different verbiage, plaintiffs ask this Court to order NYPA and Entergy to provide them with a clear, definitive and binding statement of (a) what their rights are as NYPA employees under NYSERS; and (b) what their rights will be after NYPA's assets are sold and they become Entergy employees. To the extent that the claim seeks a declaration of their rights under a pension plan for state employees, it does not state a federal claim. As explained above, employee benefit plans run by state agencies are public assets, and thus not subject to ERISA. To the extent that the claims seek a declaration of future benefits as Entergy employees, the claims fall literally within the terms of one of the few permissible private actions under ERISA—a request for clarification of rights to future benefits under the terms of an ERISA employee benefit plan.

However, plaintiffs' ERISA claims appear to have been mooted by the sale of the Transfer Facilities.

**** The prohibition on the review of moot cases arises from the Article III requirement that federal courts adjudicate only "Cases and Controversies." *Id.* at 139 (citing *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974)). As with other defects in subject matter jurisdiction, mootness may be raised at any stage of the litigation. *See id.* at 140. Moreover, " '[t]o sustain our jurisdiction in the present case, it is not enough that a dispute was very much alive when suit was filed. . . . The parties must continue to have a personal stake in the outcome of the lawsuit.' " *Knaust v. City*

to that in effect for petitioner immediately prior to the Closing

iv. The Entergy Group shall provide a benefits package for petitioners that is substantially comparable in the aggregate to the benefits package provided by NYPA to petitioners as of the Closing

v. The Entergy Group shall carryover from NYPA all applicable calculations of years of service, waiting periods, pre-existing conditions, annual or lifetime deductibles, out-of-pocket healthcare expenses and shall waive any and other limitations or prerequisites of like kind so that eligibility for or level of employee benefits provided to petitioners shall be substantially comparable in the aggregate upon petitioners transfer.

vi. Petitioners shall have the right to accrue unused vacation time

vii. Petitioners shall have the right to accrue unused sick leave.

c. Medical and Life Insurance–Retirement

i. Petitioners, and their family, will continue to receive lifetime medical benefits at no cost to them upon petitioners' retirement.

ii. The Entergy Group shall provide to petitioners a retiree health and life insurance program to each petitioner who retires from employment within three years after the closing that is identical in all material respects to the benefits package provided by NYPA as of the closing, including with respect to eligibility requirements.

iii. NYPA or The Entergy Group shall not diminish or impair the life insurance coverage of petitioners' life insurance coverage during their retirement, which shall continue, at no charge to petitioners, at a life insurance amount of 40% of salary in force prior to retirement, with a minimum benefit of $20,000.00 and a maximum of $50,000.00.

d. Vacation Days Upon Retirement

i. . NYPA or The Entergy Group shall not diminish or impair the ability of petitioners, upon retirement, to apply not more than 40 days of accrued but unused vacation days towards their retirement benefit calculation.

e. Sick Leave Upon Retirement

i. NYPA or The Entergy Group shall not diminish or impair the ability of petitioners, upon retirement, to cash out up to 100 days of accrued by unused sick leave, or apply up to 165 days of unused accrued sick leave towards their retirement service credit, or a combination of both.

(Petition ¶ 230.).

*of Kingston,* 157 F.3d 86, 88 (2d Cir.1998) (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)), *cert. denied,* 526 U.S. 1131, 119 S.Ct. 1805, 143 L.Ed.2d 1009 (1999). "A case becomes moot only when it is impossible for the court to grant any effectual relief whatever to a prevailing party. In other words, a plaintiff must have suffered or be threatened with an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *In Re Kurtzman,* 194 F.3d 54, 58 (2d Cir.1999) (citations omitted).

 The sale of the nuclear power plants has been consummated,[3] and most of the plaintiffs have signed on as Entergy employees. There is no allegation in the Complaint (which plaintiffs have not sought leave to amend) from which anyone could conclude that plaintiffs have not been made fully aware of their rights, obligations and benefits as Entergy employees. Indeed, plaintiffs' Petition was premised on the notion that, *prior to the sale,* they needed "specific answers to specified questions regarding plaintiffs' future employment, benefits, rights and entitlements, so as to provide necessary clarity, guidance and certainty to plaintiffs." (Pl. Mem. in Opp. to Def. Mot. to Dismiss at 4.) Plaintiffs themselves have acknowledged that "[a]fter plaintiffs are transferred to the Entergy Group, plaintiffs shall no longer be NYPA employees and thus their rights and claims may be mooted." (Id. at 8.) There is simply no case or controversy in connection with those claims, and the Court lacks subject matter jurisdiction over them. *Fox v. Board of Trustees of the State Univ. of N.Y.,* 42 F.3d 135, 140 (2d Cir.1994) (citing *New York City Employees' Retirement Sys. v. Dole Food Co.,* 969 F.2d 1430, 1433 (2d Cir.1992)), *cert. denied,* 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995).

 On March 8, 2001, this court asked the plaintiffs to submit a two-page letter brief explaining why the consummation of the sale of the Transfer Facilities did not render the Complaint moot. In their response dated March 12, 2001, plaintiffs backtracked from their earlier concession of mootness and contended that a case cannot be mooted when a plaintiff sues in a representational capacity. *Brandon v. Board of Educ.,* 487 F.Supp. 1219, 1224–1225 (N.D.N.Y.) aff'd, 635 F.2d 971 (2d Cir.1980). They argued that, because the action was maintained by the NGEA in a representational capacity, plaintiffs had a continuing stake in the litigation, despite the start of employment at Entergy by certain of the individual plaintiffs. In *Brandon,* plaintiffs were high school students who sued individually, and on behalf of the organization "Students for Voluntary Prayer" for equitable relief against a school district to allow communal prayer meetings in a public school. *Id.* The court rejected defendant's argument that the case was mooted by the graduation of some of the students. It held that because some of the students had not graduated and the situation had not been resolved to plaintiffs' satisfaction, the court would continue to "assume that a proper adversarial relationship assuring presentation of the issues sill exists." *Id.* at 1225. The *Brandon* court also noted that because the case involved a damages claim (brought by graduated, and non-graduated students) based upon denial of a personal liberty— the action need not be dismissed as moot. *Id.* By contrast, the Second Circuit recently held that parents who sued a public

---

**3.** I note that no one ever asked this Court to enjoin the sale so that the issues raised by the Complaint could be resolved.

school in a representational capacity (on behalf of their children) for violation of First Amendment rights, did not continue to have representational standing after their children graduated from the school. *See Altman v. Bedford Central Sch. Dist.*, 245 F.3d 49 (2d Cir.2001) ("Because no plaintiff retains standing to challenge the activities at those schools, claims with respect to those activities must be dismissed as moot.").

Like *Brandon* and *Altman*, the present case was brought by plaintiffs individually, and also by the NGEA in a representational capacity. However, NGEA's continuing interest in plaintiffs' rights to pension and employment as Entergy employees has no impact whatsoever on the fact that any declaration of *future* rights was mooted by the sale of the Transfer Facilities. NGEA has not alleged that the former NYPA employees are unaware of their rights and benefits vis-a-vis Entergy. And if NGEA is trying to assert a broader right on behalf of all New York State employees in connection with the privatization of formerly public facilities (to wit, obtaining some sort of declaration that the state cannot prioritize facilities if it results in any change in benefits for formerly public employees), then the claim does not seek a declaration of its constituents' future rights under a private pension plan, and thus does not fall under ERISA.

Insofar as portions of the first and second claims for relief purport to allege causes of action against NYPA solely on the basis of state law, such as its claims that NYPA failed to perform a duty enjoined on it by law; that NYPA acted in excess of its authority; and declarations relating to petitioners' NYSERS vested pension rights, they raise no federal question and are not preempted by ERISA. Those claims may be re-pleaded in a state court action if petitioners feel it appropriate.

*Third and Fourth Claims for Relief*

The third claim for relief seeks a declaration from the Court that they are (a) third party beneficiaries under the agreement; (b) entitled to enforce the written and oral promises made by NYPA and The Entergy Group regarding the terms, conditions and benefits of their employment and employment benefits; (c) entitled to enforce the written and oral promises made by NYPA and The Entergy Group regarding the pension and retirement benefits they are entitled to upon their retirement; and (d) shall obtain from NYPA the difference if The Entergy Group's pension payment is not equal, or the employment and retirement benefits are not identical in all material respects. (Petition.¶ 232). The fourth claim for relief requests a declaration that any attempt by NYPA and Entergy to diminish or impair the pension and retirement benefits of petitioners violates the New York State Constitution, Article V, Section 7 (Petition ¶ 244.)

██ In their letter brief of March 12, 2001, plaintiffs contend that even after the sale of the Transfer Facilities, their claims for breach of fiduciary duty against NYPA, and for a declaration that pension rights earned through NYPA employment would not be diminished, were still viable. I agree. However, these "viable" issues present only questions of State law: whether plaintiffs are third party beneficiaries of the Agreement; whether NYPA breached some fiduciary duty to its employees; whether certain promises that were allegedly made to them while the sale was pending are now enforceable; and (perhaps) whether NYPA violated the New York State Constitution by permitting their jobs to be transferred to an employer who is affording them less in the way of employee benefits. Assuming, *arguendo*, that plaintiffs—who by now surely know whether they are worse off as Entergy employees than they were as NYPA em-

ployees—have reason to complain about how the sale was consummated, they are raising issues of State law concerning the capacity of the State to enter into a privatization contract. This question is not preempted by ERISA. Indeed, the ERISA issue—what benefits plaintiffs will receive as private sector employees—is purely incidental to the State Constitutional and legal questions.

Therefore, the third and fourth claims for relief must be remanded on the ground that there is no federal jurisdiction over them and that they are not pendent to any federal claim.

## CONCLUSION

Thus, the First and Second Claims for relief are dismissed insofar as they seek relief vis-a-vis Entergy under ERISA, and all remaining claims are remanded to state court.

This constitutes the decision and order of this Court.