**Cheryl MACRO and Kim Zastrow, Individually and as Representatives of a Class of Persons Similarly Situated, Plaintiffs,**

v.

**INDEPENDENT HEALTH ASSOCIATION, INC., and Independent Health Corporation, Defendants.**

No. 01–CV–0504C(SC).

United States District Court,
W.D. New York.

Oct. 25, 2001.

Brown & Kelly, LLP, Buffalo, NY (Lisa T. Sofferin, of Counsel), for Plaintiffs.

Independent Health Association, Inc., Buffalo, NY (Frederick B. Cohen, of Counsel), for Defendants.

## INTRODUCTION

CURTIN, District Judge.

Plaintiffs commenced this action in New York State Supreme Court, Erie County, against defendants Independent Health Association, Inc., and Independent Health Corporation (referred to collectively herein as "Independent Health" or "defendant") seeking to challenge a notice of modification of medical insurance coverage for the treatment of infertility. The case was removed by defendant to this court pursuant to 28 U.S.C. § 1441 on the basis of original jurisdiction under the Employee Retirement Income Security Act ("ERISA"). Plaintiffs have moved pursuant to 28 U.S.C. § 1447 to remand the action to state court, and for alternative relief should the court retain jurisdiction (Item 2). Defendant has filed a cross-motion to dismiss or for summary judgment pursuant to Fed.R.Civ.P. 12(b) and 56(c) (Item 8). For the following reasons, plaintiffs' motion to remand is granted.

## BACKGROUND

Individual plaintiffs Cheryl Macro and Kim Zastrow are covered by medical insurance provided under Independent

Health's Encompass Group Health Contract through their husbands' employer, the Tonawanda City School District. Both plaintiffs are currently receiving medical treatment to assist conception, including the prescription drug Repronex and intrauterine insemination ("IUI"), which is covered by Independent Health. (*See* Macro and Zastrow Affs., attached to Item 1, Ex. C).[1]

Independent Health is a health maintenance organization ("HMO"), certified under Article 44 of New York Public Health Law to operate in eight counties in the Western New York region, "through which members of an enrolled population are each entitled to receive comprehensive health services for an advance or periodic charge ...." N.Y. Pub. Health Law § 4400 (*see* Item 11, ¶ 1). According to defendant, 80 percent of Independent Health members are covered under group health contracts offered through their employers and governed by the substantive provisions of ERISA (*id.*, ¶ 20).[2]

In April 2001, Independent Health sent a notice to its group health insurance plan subscribers advising as follows:

[W]e would like to inform you of a change to the infertility benefit, which *will not become effective until your group health plan's renewal date, beginning with groups that renew on July 1, 2001.* As some of the other local plans have done, Independent Health will no longer cover the treatment of infertility as part of your group health contract, however diagnosis of infertility will be covered as it has in the past.

(State Court Complaint, Item 2, Ex. A) (emphasis in original). Plaintiffs' group health plan renewal date is January 1, 2002 (Item 8, Cohen Aff., ¶ 11).

On June 25, 2001, plaintiffs commenced a proposed class action in state court on behalf of themselves and all persons similarly situated as insured members of health plans issued by Independent Health who are being treated for infertility or correctable medical conditions related to infertility and have received (or will receive) the above notice (*see* Item 1, Ex. A). The proposed class is alleged upon information and belief to consist of more than 1,200 members (*id.*, ¶ 6). The amended state court complaint, served and filed on July 9, 2001, sets forth eight causes of action challenging the purported exclusion of coverage for infertility treatment on state statutory and common law grounds (*id.*, Ex. B). Specifically, in the first cause

---

1. Ordinarily on a motion to remand, the court's determination of removal jurisdiction is confined to a consideration of the claims set forth in the "well-pleaded" complaint. *See, e.g., Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). However, in a case such as this where ERISA preemption is asserted as the basis for removal, the court may "look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1488 (7th Cir.1996); *see also* 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3734 at 370 (in practice, federal courts usually do not limit remand inquiry to face of complaint, but rather consider facts disclosed on record of case as a whole).

2. An "employee welfare benefit plan" governed by ERISA is defined as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits ....

29 U.S.C. § 1002(1).

of action, plaintiffs allege that the exclusion violates several express provisions of New York Insurance Law, including § 3216(i), which provides as follows:

> (A) Every policy which provides coverage for hospital care shall not exclude coverage for hospital care for diagnosis and treatment of correctable medical conditions otherwise covered by the policy solely because the medical condition results in infertility.
>
> (B) Every policy which provides coverage for surgical and medical care shall not exclude coverage for surgical and medical care for diagnosis and treatment of correctable medical conditions otherwise covered by the policy solely because the medical condition results in infertility.

N.Y. Ins. Law § 3216(i)(13)[3] (*see* Item 1, Ex. B, ¶¶ 20–24).

In the second cause of action, plaintiffs challenge the April 2001 notice as discriminatory in violation of New York Insurance Law and Human Rights Law in that it results in the provision of diminished health care benefits for persons disabled by infertility (*see* Item 1, Ex. B, ¶¶ 25–31). The third cause of action seeks declaratory relief with respect to the rights and obligations of the parties to the contract (*id.*,

¶¶ 32–36). The fourth cause of action seeks to enjoin the termination or modification of coverage for the treatment of infertility or correctable medical conditions related to infertility (*id.*, ¶¶ 37–40). The fifth cause of action alleges that the April 2001 notice constitutes a breach of contract (*id.*, ¶¶ 41–44). The sixth cause of action alleges breach of the implied covenant of good faith and fair dealing (*id.*, ¶¶ 45–52). The seventh cause of action alleges intentional misrepresentation as to the nature and extent of the coverage offered by defendant for treatment related to infertility (including conception and pregnancy maintenance), causing plaintiffs to suffer severe emotional distress (*id.*, ¶¶ 53–62). The eighth cause of action, which was added by the amended complaint, alleges that the April 2001 notice is deceptive and misleading in violation of New York General Business Law § 349 (*id.*, ¶¶ 63–71). Plaintiffs seek compensatory and punitive damages "in a sum according to proof," in addition to the specific requests for declaratory and injunctive relief.

Meanwhile, on July 5, 2001, New York State Supreme Court Justice Joseph G. Makowski granted plaintiffs' application for an order to show cause why the proposed class should not be certified and why discovery should not be expedited

---

3. Similarly, N.Y. Ins. Law § 3221(k)(6) provides:

(A) Every group policy issued or delivered in this state which provides coverage for hospital care shall not exclude coverage for hospital care for diagnosis and treatment of correctable medical conditions otherwise covered by the policy solely because the medical condition results in infertility.

(B) Every group policy issued or delivered in this state which provides coverage for surgical and medical care shall not exclude coverage for surgical and medical care for diagnosis and treatment of correctable medical conditions otherwise covered by the policy solely because the medical condition results in infertility.

N.Y. Ins. Law § 4303(s) provides:

(1) A hospital service corporation or health service corporation which provides coverage for hospital care shall not exclude coverage for hospital care for diagnosis and treatment of correctable medical conditions otherwise covered by the policy solely because the medical condition results in infertility.

(2) A medical expense indemnity or health service corporation which provides coverage for surgical and medical care shall not exclude coverage for surgical and medical care for diagnosis and treatment of correctable medical conditions otherwise covered by the policy solely because the medical condition results in infertility.

(Item 1, Ex. C). The order directed Independent Health to answer the complaint by July 16, 2001, and further directed the parties to submit responding and reply papers to the court by July 11, 2001 (*id.*).

On July 13, 2001, defendant served and filed a notice of removal of the action to this court, asserting original federal jurisdiction and preemption under ERISA, 29 U.S.C. § 1001, *et seq.*, and/or the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 300gg, *et seq.* On July 18, 2001, plaintiffs filed a motion to remand the action to state court on the ground that defendant has failed to establish removal jurisdiction, and in the alternative for expedited class certification and discovery should the court retain jurisdiction (*see* Item 3). In response, Independent Health filed a cross-motion to dismiss or for summary judgment. Because I find remand to be appropriate, plaintiff's motion to remand is granted, and the court is without subject matter jurisdiction to rule on the issues raised by defendant's motion.

### DISCUSSION

Plaintiffs contend removal of the action to this court was improper because the causes of action set forth in the amended state court complaint are based primarily on New York Insurance Law, and as such are not preempted by ERISA. According to plaintiffs, because ERISA preemption does not apply, this court has no subject matter jurisdiction and the case must be remanded to state court.

█ As an initial matter, when an action is removed from state court, the district court first must determine whether it has subject matter jurisdiction over the claims before considering the merits of a motion to dismiss, for summary judgment, or for other relief. See *University of South Alabama v. The American Tobacco Company*, 168 F.3d 405, 410 (11th Cir.1999). If re-moval was inappropriate, the court must remand for lack of subject matter jurisdiction, notwithstanding the pendency of the other motions. *Id.* at 411; *see also Toumajian v. Frailey*, 135 F.3d 648, 655 (9th Cir.1998) (district court should have remanded for lack of subject matter jurisdiction and should not have dismissed on grounds of ERISA preemption).

█ Under the removal statute, any civil action brought in state court may be removed by the defendant to federal district court if the district court has original jurisdiction. 28 U.S.C. § 1441(a); *see Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 7, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The defendant carries the burden of establishing removal jurisdiction. *See United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *Franchise Tax Bd.*, 463 U.S. at 7, 103 S.Ct. 2841. Because of its mandatory language, and the significant federalism concerns raised by removal jurisdiction, the federal courts are directed to construe the removal statute strictly. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). All doubts about jurisdiction should be resolved in favor of remand to state court. *See University of South Alabama*, 168 F.3d at 411(presumption in favor of remand is necessary because if federal court reaches merits of pending motion in removed case where subject matter jurisdiction is lacking, it deprives state court of its right under Constitution to resolve controversies in its own courts; citing cases).

District courts have original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the "well-pleaded complaint" rule, a cause of action is said to arise under federal law only if a federal question is presented on the face of the plaintiff's complaint. *Metropolitan Life Ins. Co., v. Taylor*, 481 U.S. 58, 62, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Because federal preemption is a defense not appearing on the face of the complaint, a defendant generally may not remove an action on the basis of federal preemption. *Id.* However, a narrow exception to this rule exists where the "preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting *Taylor*, 481 U.S. at 63–64, 107 S.Ct. 1542); *see also Marcus v. AT & T Corp.*, 138 F.3d 46, 52 (2d Cir.1998).

ERISA is one such statute. *Taylor*, 481 U.S. at 65–66, 107 S.Ct. 1542. ERISA comprehensively regulates employee welfare benefit plans, including those that provide medical care "through the purchase of insurance or otherwise ...." 29 U.S.C. § 1002(1); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The statute's express preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee bene-

fits plan" covered by the Act. 29 U.S.C. § 1144(a). A state law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

■ Claims falling within ERISA's civil enforcement provisions [4] seeking to recover benefits, to enforce rights, or to clarify rights to future benefits under a plan covered by ERISA are said to be "completely pre-empted." *Rubin–Schneiderman v. Merit Behavioral Care Corp.*, 2001 WL 363050, at *2 (S.D.N.Y. April 10, 2001) (citing *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 272 (2d Cir.1994)). That is, even if the complaint on its face makes only state law claims, those claims are generally considered as claims arising under federal law and removable to federal court if they seek to enforce or clarify rights under an employee benefit plan that is covered by ERISA. *See, e.g., In the Matter of Applications of Nuclear Generation Employees Association*, 145 F.Supp.2d 291, 297 (S.D.N.Y.2001).

In support of their motion to remand, plaintiffs primarily contend that the claims in this case are not preempted, and therefore do not arise under federal law, because they fall within the exception provided by ERISA's "saving clause." Plaintiffs also contend, though less forcefully, that their claims are not preempted because they do not "relate to" an employee benefit plan within the scope of ERISA's preemption clause.[5] Because claims based on

---

4. Section 1132(a) provides, in pertinent part:

  A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ....

  29 U.S.C. § 1132(a)(1)(B).

5. At oral argument, plaintiffs cited *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), and *American Drug Stores, Inc. v. Harvard Pilgrim Health Care, Inc.*, 973 F.Supp. 60 (D.Mass. 1997), as general caselaw support for their contention that the state Insurance Law provisions at issue in this case are not preempted

state laws which purport to "regulate[ ] insurance" are not preempted "even if they also 'relate to' employee benefit plans," *Shackelton v. Conn. General Life Ins. Co.,* 817 F.Supp. 277, 281 (N.D.N.Y.1993), the court's analysis will focus on the application of the saving clause (*cf., Marcella v. Capital District Physicians Health Plan, Inc.,* 47 F.Supp.2d 289, 293 (N.D.N.Y.1999) (citing *Shackelton* )).

The saving clause, set forth at 29 U.S.C. § 1144(b)(2)(A), provides that "nothing in [the ERISA statute] shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." As explained by the Second Circuit in *Franklin H. Williams Ins. Trust v. Travelers Ins.,* 50 F.3d 144 (2d Cir.1995), two tests have been used by the courts to determine if a state law is one which "regulates insurance" for the purpose of applying the saving clause. *Id.* at 150 (citing *Metropolitan Life,* 471 U.S. at 740, 105 S.Ct. 2380 (1985)). Under the so-called "common sense" test, a court considers the ordinary, common-sense meaning of the term "regulate," which "lead[s] to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Id.,* 50 F.3d at 150 (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 50, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). The second test is borrowed from cases interpreting the McCarran–Ferguson Act, 15 U.S.C. § 1012, which subjects the insurance industry to the federal antitrust laws. Under this test, three factors are considered: first, whether the practice has the effect of transferring or spreading policyholder's risk; second, whether the

practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry. *Franklin H. Williams,* 50 F.3d at 149 (citations omitted).

In the *Metropolitan Life* case, the Massachusetts Attorney General brought suit in state court for declaratory and injunctive relief to enforce a state statute which mandated minimum mental healthcare benefits. Applying both a "common sense" approach and the McCarran–Ferguson factors, the Supreme Court held that the state statute was not preempted because it regulated insurance within the meaning of ERISA's saving clause. *Metropolitan Life,* 471 U.S. at 742–45, 105 S.Ct. 2380. The Court described Massachusetts' mandated-benefit law as "only one variety of a matrix of state laws that regulate the substantive content of health-insurance policies ...," *id.* at 729, 105 S.Ct. 2380, and noted that while ERISA "establishes various uniform procedural standards" for employee benefit plans, "[i]t does not regulate the substantive content of welfare-benefit plans." *Id.* at 732, 105 S.Ct. 2380 (citing *Shaw,* 463 U.S. at 91, 103 S.Ct. 2890). The Court also found

> [no] contrary case authority suggesting that laws regulating the terms of insurance contracts should *not* be understood as laws that regulate insurance. In short, the plain language of the saving clause, its relationship to the other ERISA pre-emption provisions, and the traditional understanding of insurance regulation, all lead us to the conclusion that mandated-benefit laws such as [the Massachusetts statute] are saved from

because they do not "relate to" employee benefit plans. Because I find that those provisions fall squarely within ERISA's saving clause (as demonstrated in the text *infra* ), and are exempted from preemption even if

they also "relate to" employee benefit plans, I do not find it necessary to directly address the precedential value of these additional cases cited by plaintiff.

pre-emption by the operation of the saving clause.

*Id.* at 744, 105 S.Ct. 2380.

In *Franklin H. Williams,* an insurance trust sued the Travelers Insurance Company in state court seeking compensatory and punitive damages for violations of New York Insurance Law § 3214(c), which requires interest on the proceeds of a life insurance policy to be computed from the date of death (as opposed to the date of filing of the claim, which was the date used by Travelers). The plaintiff also asserted common law causes of action for breach of contract and conversion. Invoking ERISA preemption, Travelers removed the action to federal court. Summarizing pertinent Supreme Court precedent, the Second Circuit explained:

> "ERISA preemption, without more, does not convert a state claim into an action arising under federal law" for removal purposes.... [T]he "more" [is] provided when the state claim falls "within the scope of [ERISA's civil enforcement provisions]". But there must first be preemption, which is a necessary precondition to removal. Thus, when preemption is precluded by the saving clause, removal is also barred.

*Franklin H. Williams,* 50 F.3d at 149 (citations omitted). Upon application of both the "common sense" and McCarran–Ferguson tests, the Second Circuit found that § 3214(c) was saved from preemption under § 1144(b)(2)(A). *Franklin H. Williams,* 50 F.3d at 149–51. The court viewed the state insurance law provision at issue, concerning the amount of payment to which an insured is ultimately entitled, "similar to the statute addressed in *Metropolitan Life,* and ... precisely the type of statute that Congress intended to save from ERISA preemption." *Id.* at 151. Finding the case improperly removed, the Circuit directed remand of the entire action-statutory and common law claims alike-to state court.

Other cases decided within this circuit have followed the precedent of *Metropolitan Life* and *Franklin H. Williams,* holding that claims brought under state statutes which regulate insurance are not subject to ERISA preemption for the purpose of federal court removal jurisdiction. For example, in *Trapanotto v. Aetna Life Insurance Co.-Aetna Health Plans,* 1996 WL 417519 (S.D.N.Y. July 25, 1996), the plaintiff brought an action in state court against his group health plan insurer to enforce provisions of New York Insurance Law §§ 3216 and 3221 (the same general statutes relied upon by plaintiffs in this case) which except certain medical expenses for minors from annual deductibles and coinsurance payments. The plaintiff also stated claims for breach of contract, common law fraud, and unfair trade practices under New York General Business Law § 349, and styled the case as a class action on behalf of all persons similarly situated. The insurer removed the case to federal court, asserting ERISA preemption. The district court remanded, finding that the state statutes relied on were not preempted because they did not sufficiently "relate to" an employee benefits plan; and even if they did, they were exempted from preemption by ERISA's saving clause. The court focused primarily on § 3221, which sets forth standard provisions, guidelines and basic requirements for insurers. First, discussing at length the impact of the holdings in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ("*Travelers I*"), and *Travelers Ins. Co. v. Pataki,* 63 F.3d 89 (2d Cir. 1995) ("*Travelers II*"), the *Trapanotto* court found as follows:

Section 3221 solely targets the insurance industry. Its effect on employee benefit plans is no different, and no more acute, than scores of New York statutes which can be said to indirectly bring some economic pressure to bear on the costs of health insurance. While doing nothing to further ERISA's primary purpose, preempting § 3221 would read the limiting "relate to" language out of ERISA and invite, without Congressional direction, preemption in an area traditionally left to the states.

*Trapanotto*, 1996 WL 417519, at *6. The court then addressed the application of the saving clause, finding that § 3221 easily passed both the "common sense" and McCarran–Ferguson tests. Specifically, the *Trapanotto* court stated that § 3221 " 'does not merely have an impact on the insurance industry; it is aimed at it. . . .' Therefore, even if it were sufficiently 'related to' employee benefit plans to trigger ERISA's preemption clause, § 3221 would be excepted from preemption by ERISA's, saving clause." *Id.* at *7.

More recently, in *Natoli v. First Reliance Standard Life Insurance Co.*, 2001 WL 15673 (S.D.N.Y. January 5, 2001), the plaintiff brought a state court action against his employer's long-term disability insurance carrier alleging that the carrier's policy, which limited benefits for "mental" disabilities to two years but did not limit benefits for "physical" disabilities, violated the anti-discrimination provisions of New York Insurance Law § 4224. The insurer removed the case to federal court, and moved to dismiss pursuant to Rule 12(b)(6) on the basis of ERISA preemption. Recognizing the plaintiff's apparent concession that § 4224 "relates to" an employee benefit plan within the meaning of ERISA's preemption clause, the court focused on "the crux of the parties' dispute," *i.e.*, whether the statute " 'regulates insurance' such that it escapes preemption under ERISA's saving clause." *Id.*, 2001 WL 15673, at *2. Upon application of the "common-sense" and McCarran–Ferguson tests, the court in *Natoli* found the statute exempt from ERISA preemption under the saving clause. *Id.* at *3–*5. The court also found no need to reach the plaintiff's alternative argument that his insurance law claim did not come within ERISA's civil enforcement provisions, *id.* at *5 & n. 3, and neither subject matter jurisdiction nor supplemental jurisdiction to reach the defendant's arguments for dismissal. *Id.* at *5 & n. 4.

*Selby v. Principal Mutual Life Insurance Company*, 2000 WL 178191 (S.D.N.Y. February 16, 2000), is apparently the only decision thus far to have considered whether ERISA's saving clause applies to any of the state insurance law provisions sought to be enforced by plaintiff in this case. *Selby* did not involve removal jurisdiction. Instead, the Selbys brought suit in federal court under both ERISA and the state insurance law after their health insurance company denied coverage for treatment related to Ms. Selby's several miscarriages. Specifically, Count Two of the complaint sought relief pursuant to § 3221(k)(6) of the New York Insurance Law, one of the provisions relied upon by plaintiffs here. The insurer moved to dismiss Count Two on the ground that it was preempted by ERISA. Relying on *Metropolitan Life* and *Franklin H. Williams*, and based primarily on the defendant's concession that § 3221(k)(6) is not preempted by ERISA because it falls within the scope of the saving clause, the district court denied the motion to dismiss the state law claim. The court noted in passing, "without deciding, that § 3221(k)(6) is a law regulating insurance and thus is saved from preemption . . . [and] that the statute may also withstand preemption because it may not 'relate to' employee bene-

fit plans within the meaning of ERISA's preemption clause." *Selby,* 2000 WL 178191, at *3 n. 6 (citing *Trapanotto,* 1996 WL 417519, at *5–6).

■ Based on this precedent, and focusing on "the crux of the parties' dispute," *Natoli,* 2001 WL 15673, at *2, I find that the state law claims set forth in plaintiff's amended complaint fall within ERISA's saving clause, and are exempt from preemption. First of all, a common-sense reading of the statutory language reveals that the Insurance Law provisions sought to be enforced by plaintiff are clearly and obviously directed toward the insurance industry. Each provision contains a mandatory prohibition against an insurance policy's exclusion of health insurance coverage for diagnosis and treatment of a correctable medical condition solely because the condition results in infertility. As noted in the *Selby* case, these provisions "regulate[ ] the substantive content of benefit plans by requiring coverage for correctable medical conditions that result in infertility if those conditions are otherwise covered by the plan." *Selby,* 2000 WL 178191, at *3 n. 4. Under this straightforward, "common-sense" analysis, the state law relied upon by plaintiff undeniably regulates insurance. *See Trapanotto,* 1996 WL 417519, at *7 (N.Y. Ins. Law § 3221 "does not merely have an impact on the insurance industry; it is aimed at it.") (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)).

In addition, the three McCarran–Ferguson factors are met. First, each Insurance Law provision cited by plaintiff prohibits medical insurance carriers from excluding coverage for certain conditions, thereby increasing the cost of the policy and ultimately having the effect of transferring or spreading the cost—and the risk—among policyholders. Second, since the prohibition is framed in mandatory language, it constitutes "an integral part of the policy relationship between the insurer and the insured." In *Metropolitan Life,* the Supreme Court held that a statute meets this prong if it "limit[s] the type of insurance that an insurer may sell to the policyholder." 471 U.S. at 743, 105 S.Ct. 2380. Sections 3216(i)(13), 3221(k)(6) and 4303(s) satisfy this criterion by prohibiting the exclusion of coverage for treatment of a correctable medical condition solely because the condition results in infertility. Third, because these provisions directly regulate the terms of health insurance policies, rather than express a general rule of law, they are "limited to entities within the insurance industry." *Cf. Franklin H. Williams,* 50 F.3d at 150 ("At a minimum, there is no clear failure to satisfy any McCarran–Ferguson standard in this case."). Finally, defendant has cited "[no] contrary case authority suggesting that [the state insurance laws relied on by plaintiffs] should *not* be understood as laws that regulate insurance." *Metropolitan Life,* 471 U.S. at 744, 105 S.Ct. 2380.

Seeking to bolster the argument for remand, plaintiffs additionally contend that the group health care plan under which they are covered, maintained for the employees of the Tonawanda City School District, is a "governmental plan" as defined at 29 U.S.C. § 1002(32),[6] and exempt from ERISA's coverage pursuant to 29 U.S.C. § 1003(b)(1).[7] Indeed, this was the hold-

---

**6.** 29 U.S.C. § 1002(32) provides:

The term "governmental plan" means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing . . . . .

**7.** 29 U.S.C. § 1003(b)(1) provides:

ing of United States Magistrate Judge Leslie G. Foshio in *Clark v. Group Plan for Employees of North Tonawanda Public Schools,* 845 F.Supp. 117 (W.D.N.Y. 1994), with respect to a self-insured group health plan formed by the North Tonawanda Public Schools for the benefit of its employees. *See id.* at 120 (citing *Feinstein v. Lewis,* 477 F.Supp. 1256 (S.D.N.Y. 1979) (employee benefits plans established under collective bargaining agreements between union and school districts, funded entirely by employees, are governmental plans exempted from ERISA), *aff'd,* 622 F.2d 573 (2d Cir.1980); *Lovelace v. Prudential Insurance Company of America,* 775 F.Supp. 228 (S.D.Ohio 1991) (same for plan covering city public school system employees, even though plan was issued and administered by private insurer); *see also* Opinion of U.S. Department of Labor, Office of Pension and Welfare Benefit Programs, No. 79–83A (November 20, 1979) (Health and Welfare Fund of the Philadelphia Federation of Teachers, which provided health, disability, retirement, and death benefits to employees and their families, held to be a governmental plan within the meaning of ERISA)).

■ Despite ample opportunity to do so, defendant has not come forward with any explanation as to why the group health care plan maintained for the employees of the Tonawanda City School District should not be subject to the same exemption from ERISA as the plan maintained for the employees of the North Tonawanda Public Schools. Accordingly, based on the authority of *Clark v. Group Plan for Employees of North Tonawanda Public Schools* and the cases cited therein, I agree that the group health care plan under which the individual plaintiffs are covered is a "governmental plan" as defined

at 29 U.S.C. § 1002(32), and is exempt from ERISA's coverage pursuant to 29 U.S.C. § 1003(b)(1).

Plaintiffs also contend their claims are not preempted because Independent Health is not a "fiduciary" against whom suit can be brought under ERISA, citing *Pegram v. Herdrich,* 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). In light of the court's finding that the claims fall within the saving clause, as well as defendant's concession of this point (*see* Item 22, p. 3 n. 1), I find it unnecessary to address this contention.

■ Finally, defendant argues that even if the claims of the named representative plaintiffs are not preempted, the amended complaint makes allegations on behalf of prospective class members that implicate ERISA plans. The same argument was expressly rejected by the court in *Berthelot v. Stallworth,* 2000 WL 222155 (E.D.La. February 18, 2000), a case cited by both parties. As noted in *Berthelot,* prior to class certification pursuant to Fed.R.Civ.P. 23, the only plaintiff before the court is the representative party. Id. at *2. "Consequently, a court without jurisdiction over the claims of the named party likewise has no jurisdiction over the claims as they pertain to the prospective class". *Id.* (citing *Board of School Comm'rs of City of Indianapolis v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975)). As stated in *Berthelot,* "[t]he court's ability to assert jurisdiction over potential members of a potential class is irrelevant for purposes of determining whether this court has federal question jurisdiction over this matter ... because none of these individuals with ERISA plans are before the court." *Id.*

The provisions of [ERISA] shall not apply to any employee benefit plan if ... such plan

is a governmental plan (as defined in section 1002(32) of this title) . . . .

Based on this analysis, I find that plaintiffs' claims are saved from ERISA preemption under 29 U.S.C. § 1144(b)(2)(A), and are exempt from ERISA regulation under 29 U.S.C. § 1003(b)(1). Defendant has therefore failed to meet its burden of establishing removal jurisdiction based on a cause of action arising under federal law. Accordingly, the court is without jurisdiction to consider defendant's motion to dismiss, removal was improper, and the entire case must be remanded to state court for lack of subject matter jurisdiction.

## CONCLUSION

Based on the foregoing, plaintiffs' motion (Item 2) to remand the case to New York State Supreme Court is granted. The Clerk of the Court is directed to take whatever steps may be necessary to cause the remand, and to close the file. Defendant's cross-motion to dismiss (Item 8) is hereby rendered moot.

So ordered.